UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN LENTI,                                  :
     Plaintiff,                           :
                                          :
v.                                           :        3:20-cv-127 (SRU)
                                          :
STATE OF CONNECTICUT, et al.,                :
     Defendants.                          :

## INITIAL REVIEW ORDER

John Lenti is a sentenced inmate in the custody of Connecticut's Department of
Correction (the "DOC"), and he is currently incarcerated at Cheshire Correctional Institution
("Cheshire").   On January 23, 2020, Lenti, proceeding *pro se*, filed this action as a petition for a
writ of mandamus against the State of Connecticut, the DOC, and four individual DOC
employees in their individual and official capacities: Commissioner Rollin Cook, Cheshire
Warden Kenneth Butricks, Americans with Disabilities Act ("ADA") Compliance Officer
Colleen Gallagher, and Director of Officer Classification and Population Management David
Maiga (collectively, the "Defendants").   *See* Compl., Doc. No. 1.

On February 24, 2020, Lenti made an "emergency motion" to "speed up" his case.   *See*
Mot., Doc. No. 10.   On February 28, 2020, Magistrate Judge William I. Garfinkel granted
Lenti's motion to proceed *in forma pauperis*.   *See* Order, Doc. No. 12.   On March 4, 2020,
Lenti make another "emergency motion" in which he requested speedy relief.   *See* Mot., Doc.
No. 15.   On March 5, I ordered the Clerk to serve process on the Defendants.   On March 10,
2020, Lenti sent a letter against requesting speedy action in this case.   *See* Letter, Doc. No. 17.
On March 16, 2020, the Defendants filed an objection to Lenti's complaint and his two
"emergency motions."   *See* Defs.' Obj., Doc. No. 21.

As an initial matter, although Lenti claims in his complaint to be suing the individual defendants in their individual capacities, he seeks no money damages and asks for injunctive relief.   Thus, I dismiss the claims against the individual defendants in their individual capacities. Further, pursuant to federal law, I cannot issue a writ of mandamus against state officials.   *See* 28 U.S.C. § 1361.[1]   However, I construe Lenti's complaint as seeking preliminary injunctive relief to enforce his right to compliance with Title II of the ADA, 42 U.S.C. § 12132, and to remedy deliberate indifference to his safety in violation of the Eighth Amendment under 42 U.S.C. § 1983.   *Lebron v. Armstrong*, 289 F. Supp. 2d 56, 58 (D. Conn. 2003) (construing prisoner's petition for writ of mandamus as request for preliminary injunction).

Upon initial review, I permit Lenti's complaint to be served on the Defendants in their official capacities.[2]

## I.      Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoners' civil complaints and dismiss any portion of those complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.   Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.   *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56

---

[1]   Specifically, 28 U.S.C. § 1361 provides that federal district courts have jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   Thus, under section 1361, federal courts "have no general power to compel action by state officials." *Spain v. Agostino*, 2019 WL 2209162, at *2 (S.D.N.Y. May 21, 2019) (citing *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988)).

[2]   Of course, in an effort to address Lenti's claims as expeditiously as possible, I have already ordered the Clerk to serve the Defendants.   *See* Order, Doc. No. 16.

(2007).   Conclusory allegations are not sufficient.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.   Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must

be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes*

*v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir.

2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Factual Background

The following facts are drawn from Lenti's complaint.   Commissioner Cook is

responsible for the DOC's overall compliance with the ADA.   *See* Compl., Doc. No. 1, at ¶ 13.

Director of Population Management Maiga handles inmate transfers.   *See id.* at ¶ 12.   Warden

Butricks is responsible for the overall health and safety of inmates at Cheshire.   *See id.* at ¶ 11.

On September 16, 2019, Lenti was transferred to Cheshire.   *See id.* at ¶ 6.   Lenti suffers from

irritable bowel syndrome and has had back surgery.   *See id.*   Lenti has a medical need for a

wheelchair and grab bars on his toilet.   *See id.* at ¶¶ 6–7.   However, Lenti has not yet received a

wheelchair, and he uses a toilet that has no grab bars, is too low, and is not ADA-compliant.

*See id.*   Lenti uses the toilet frequently, and he is in danger of slipping and falling while using

the toilet, which would further harm his already-damaged back.   *See id.* at ¶ 6.

On December 12, 2019, George Blair, an attorney with the Inmate's Legal Aid Program,

wrote an email to Colleen Gallagher, an ADA Compliance Officer for the DOC, to inform her

that Lenti's cell was not ADA compliant and apparently could not be modernized.   *See id.* at ¶ 8.

The email informed Gallagher: "Should Mr. Lenti become injured because he falls on the toilet

and injures his spine further, the DOC risks liability in a lawsuit for deliberate indifference to federal law and the health and safety of inmates."  *Id.*   The email requested that Lenti be transferred to a facility where his physical needs could be accommodated. *See id.*   To date, the Defendants have not provided the requested relief.   *See id.* at ¶ 9.

### III.    Discussion

Lenti requests an order directing the DOC to transfer him to an ADA-compliant facility, or, alternatively, to provide him with grab rails and an otherwise ADA-complaint toilet and sink, a wheelchair; a handicap accessible recreation yard; and a wellness program at Cheshire.   *See* Compl., Doc. No. 1, at ¶ 16.

The requirements for the issuance of a preliminary injunction are well established.   To obtain a preliminary injunction, a plaintiff must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012) (quoting *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.,* 660 F.3d 643, 648 (2d Cir. 2011)).   The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

If the movant seeks a "mandatory preliminary injunction that alters the status quo by commanding some positive act," rather than a "prohibitory injunction seeking only to maintain

the status quo" then the burden of proof is even greater.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401

406 (2d Cir. 2011) (internal quotation marks and citation omitted).   Such a mandatory injunction

"should issue only upon a clear showing that the moving party is entitled to the relief requested,

or where extreme or very serious damage will result from a denial of preliminary relief."  *Id*.   A

party seeking a mandatory injunction must make a substantial showing of a likelihood of success

on the merits.  *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

       "In the prison context, a request for injunctive relief must always be viewed with great

caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v.

Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–

47 (1994)) (other citations omitted).   Federal courts may order prospective relief "in any civil

action with respect to prison conditions," provided the relief "extend[s] no further than necessary

to correct the violation of the Federal right of a particular plaintiff or plaintiffs."   18 U.S.C. §

3626(a)(1)(A).   Injunctive relief afforded by a court must be narrowly tailored or proportional to

the scope of the violation and extending no further than necessary to remedy the violation.

*Brown v. Plata*, 563 U.S. 493, 530 (2011).   A court should not issue "remedial orders that

unnecessarily reach out to improve prison conditions other than those that violate the

Constitution."  *Id.*

      A.    <u>ADA</u>

      Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.   Lenti may bring his ADA claim for injunctive relief against a state

5

or its agent in an official capacity.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  To

establish a violation of Title II, a plaintiff must show "(1) that he is a 'qualified individual' with

a disability;[3] (2) that he was excluded from participation in a public entity's services, programs

or activities or was otherwise discriminated against by a public entity; and (3) that such

exclusion or discrimination was due to his disability."  *Hargrave v. Vermont,* 340 F.3d 27, 34–

35 (2d Cir. 2003) (internal citation omitted).  State prisons are public entities within the meaning

of the ADA.  *Pennsylvania. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  "[T]itle II

applies to anything a public entity does."  28 C.F.R. § Pt. 35, App. B (2011).  "A qualified

individual can base a discrimination claim on one of three available theories: (1) intentional

discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable

accommodation."  *Pierce v. Semple*, 2018 WL 6173719, at *4 (D. Conn. Nov. 26, 2018)

(quoting *Fulton v. Goord*, 591 F.2d 37, 43 (2d Cir. 2003)).

     Lenti's allegations are sparse but suggest that the DOC and its officials are not providing

him reasonable accommodations in connection with his back injury that limits his mobility.  For

purposes of this initial review, I construe Lenti's allegations broadly and assume Lenti is a

qualified individual whose back injury substantially limits him in his major life activities of

ambulating, standing, sitting, and caring for himself.  In considering whether the Defendants

have failed to make reasonable accommodations for Lenti, I must consider whether the

Defendants have denied Lenti the opportunity to participate in or benefit from public services,

---

[3]  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or
without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or
transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for
the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. §
12131(2).  The ADA further defines "disability" as "a physical or mental impairment that substantially limits one or
more major life activities," a record of such an impairment, or being regarded as having such an impairment.  42
U.S.C. § 12102(1).

programs, or activities, or have otherwise discriminated against him "by reason of" his disability rather than a legitimate nondiscriminatory reason.  *See Torrez v. Semple*, 2018 WL 2303018, at *8 (D. Conn. May 21, 2018).  "[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).

Lenti's complaint indicates that he can neither ambulate safely nor use the toilet and sink safely without accommodation.  Under Title II, disabled individuals cannot be excluded from or denied the benefits of the public entity's services, programs, or activities because the entity's "facilities are inaccessible to or unusable by individuals with disabilities."  28 C.F.R. § 35.149. A "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," and a public entity must "take reasonable measures to remove architectural and other barriers to accessibility."  *Tennessee v. Lane*, 541 U.S. 509, 531 (2009).  A prison's provision of appropriately accessible toilet facilities constitutes a "service, program, or activity" within the meaning of the ADA.  *See Dunmore v. Shicker*, 2020 WL 65057, at *13 (S.D. Ill. Jan. 7, 2020) (citing *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)).

Lenti's complaint suggests that he is being deprived of the ability to use or access the prison facilities, including the toilet, sink, and recreation yard.  Lenti asserts that he would be able to use all three if he had a wheelchair, grab bars, and an accessible outdoor recreation yard. At this stage of the proceeding, Lenti has adequately alleged the three elements of his ADA claim.  I will permit Lenti's ADA claim to proceed beyond initial review for further consideration of whether he is, in fact, a qualified individual as defined by the ADA and whether

his requests for injunctive relief, including his request for a transfer[4] and a wellness program

with outside recreation,[5] are appropriate as reasonable accommodations under the ADA.

      B.    <u>Eighth Amendment</u>

To state a claim under section 1983, a plaintiff must plausibly allege that a person acting

under color of state law deprived him of a federally protected right. *See* 42 U.S.C. § 1983;

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Neither the State of Connecticut nor

the DOC is a "person" subject to suit under section 1983. *See Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989) (State and state officials acting in official capacities not persons

within meaning of section 1983); *Smith v. Conn. Dep't of Corr.*, 2014 WL 3824357, at *6

(D. Conn. 2014) (same). Thus, the Eighth Amendment claims against the State of Connecticut

and the DOC do not state a claim on which relief can be granted, so I dismiss them. *See* 28

U.S.C. 1915A(b).

When a party sues a state official in his or her official capacity, "a federal court's

remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective

injunctive relief . . . and may not include a retroactive award which requires the payment of

funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *Ex parte Young*,

209 U.S. 123, 155–56 (1908). When a party sues a state or its agencies directly—and if the

State has not waived (or Congress has not abrogated) its sovereign immunity—"the Eleventh

---

[4]  The DOC Commissioner ordinarily has discretion to determine the appropriate housing and classification for an inmate. *See McKinnon v. Chapdelaine*, 2013 WL 951324, at *1 (Conn. Super. Ct. Feb. 13, 2013); *see also* Conn. Gen. Stat. § 18–86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility . . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action."); *Olim v. Wakinekona,* 461 U.S. 238, 248 (1983) (holding that prisoners do not have a constitutionally protected right to be confined in any particular correctional facility or any particular state); *but see Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

[5]  Lenti's request for a daily, outdoor wellness program may not be a reasonable accommodation, and it may not be closely related to the alleged violations in this case.

Amendment bars a federal court from granting any relief on that claim." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120 (1984).

Here, Lenti seeks injunctive relief for the alleged Eighth Amendment violation against Commissioner Cook, Warden Butricks, ADA Compliance Officer Gallagher, and Director of Officer Classification and Population Management Maiga in their official capacities.   Although the Constitution does not require "comfortable" prison conditions, the Eight Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates."   *Farmer*, 511 U.S. at 832–33 (internal quotation marks and citations omitted).   To state a claim for deliberate indifference to health or safety under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "the minimal civilized measure of life's necessities" or a "substantial risk of serious harm."   *Id.* at 834 (internal quotation marks and citations omitted).   To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent—that is, the officials must have known that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.   *See id.* at 834, 837.   Thus, an allegation of merely negligent conduct is insufficient.   *Id.* at 835.   Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."   *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).   When evaluating a claim for deliberate indifference to inmate safety, a court

considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Here, Lenti has sufficiently alleged that the Defendants are subjecting him to a serious risk to his safety by not providing a wheelchair and grab bars, which would enable him to use the toilet and the sink.   Lenti has also alleged that he has made repeated requests for those ADA-compliant measures, including by having an attorney write to ADA Compliance Coordinator Gallagher.   *See* Compl., Doc. No. 1, at ¶¶ 4, 6, 8.   Still, the Defendants have not provided Lenti a wheelchair or grab bars.   Construing Lenti's allegations liberally, I conclude that Lenti has plausibly alleged that the Defendants acted with conscious disregard of the substantial risk of harm to Lenti posed by the condition of his cell and his lack of a wheelchair.

## VI.   Orders

The Court enters the following orders:

(1) The complaint requesting preliminary injunctive relief based on alleged violations under the ADA and the Eighth Amendment shall be served on the State of Connecticut, the DOC, and, in their official capacities, Commissioner Rollin Cook, Cheshire Warden Kenneth Butricks, ADA Compliance Officer Colleen Gallagher, and Director of Officer Classification and Population Management David Maiga.   However, the Eighth Amendment claims against the State of Connecticut and the DOC are DISMISSED.

(2) This case and *Lenti v. Ruiz, et al.*, No. 3:20-cv-156 (SRU), which Lenti filed on February 3, 2020 (about 10 days after he filed this case), share numerous common questions of law and fact.   Thus, pursuant to Fed. R. Civ. P. 42(a), the Clerk is directed to consolidate *Lenti*

10

*v. Ruiz, et al.*, No. 3:20-cv-156 (SRU), into this case and to close *Lenti v. Ruiz, et al.*, No. 3:20-cv-156 (SRU), without prejudice to reopening.

(3) Because the complaints in this case and in *Lenti v. Ruiz, et al.*, No. 3:20-cv-156 (SRU), are not identical, I grant Lenti leave to file an amended complaint in this action, should he wish, that incorporates claims from the *Ruiz* action.   That amended complaint will be due **30 days from the date of this Order**.

(4) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants State of Connecticut, Connecticut's Department of Correction, and the individual defendants—Commissioner Rollin Cook, Cheshire Warden Kenneth Butricks, ADA Compliance Officer Colleen Gallagher, and Director of Officer Classification and Population Management David Maiga—in their official capacities.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The Defendants shall file their response to Lenti's amended complaint—either an answer or motion to dismiss—within **thirty (30) days** from the date on which Lenti files an amended complaint.   If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.   The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed

with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion may be granted absent objection.

(11) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.

(12) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

12

Dated at Bridgeport, Connecticut this 30th day of April 2020.

<u>/s/ Stefan R. Underhill</u>
Stefan R. Underhill
United States District Judge