UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN LENTI,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:20-cv-127 (SRU) |
| STATE OF CONNECTICUT, et al.,<br>    Defendants. | :<br>:<br>: |

**RULING**

In this consolidated action,[1] Lenti seeks to enforce his rights under the Americans with Disabilities Act ("ADA") and the Eighth Amendment. Specifically, Lenti claims that he is now subject to conditions of confinement at Cheshire Correctional Institution ("Cheshire") that do not comply with ADA or Eighth Amendment standards. Lenti has filed three motions for temporary restraining orders ("TROs") that, essentially, request the same relief that he seeks in his lawsuit. *See* Mots., Doc. Nos. 10, 15, 27. More particularly, in Lenti's first motion for a TRO, Lenti simply asserts that he is "filing for a[n] emerg[e]ncy motion to speed this up." *See* Mot., Doc. No. 10. In Lenti's second motion for a TRO, Lenti seeks (1) immediate transfer to an ADA-compliant facility and/or (2) single-cell status. *See* Mot., Doc. No. 15. In Lenti's third motion for a TRO, he seeks an immediate transfer to an ADA-compliant facility. *See* Mot., Doc. No. 27.[2] Between Lenti's second and third motions for a TRO, the Defendants[3] filed an objection. *See* Obj., Doc. No. 21. For the following reasons, Lenti's three pending motions for TROs are

---

[1] On April 30, 2020, I ordered that *Lenti v. Ruiz,* No. 3:20-cv-156 (SRU), be consolidated into this action. *See* Initial Review Order, Doc. No. 23, at 10–11; Notice of Consolidation, Doc. No. 26.

[2] In Lenti's third motion for a TRO, Lenti names several individuals who are not parties to this action (in addition to three parties who are—Warden Butricks, Dr. Ruiz, and Officer Gallagher) and asks that the TRO be issued against them.

[3] At that time, the Defendants in this action were: The State of Connecticut, Warden Butricks, Compliance Officer Gallagher, and Director Maiga. Thus, throughout this Order, "Defendants" refers to those defendants.

**denied without prejudice**.

      **I.**      **Standard of Review**

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Con. Ed. Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir. 2005) (cleaned up); *see also Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Second Circuit applies similar standards in reviewing motions for TROs and preliminary injunctions, and district courts have likewise "assumed them to be the same." *See Foley v. State Elections Enf't Comm'n*, 2010 WL 2836722, at *3 (D. Conn. July 16, 2010) (cleaned up). Under this standard, a movant must establish "a threat of irreparable injury" and either (1) "a probability of success on the merits" or (2) "sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Id.* (cleaned up) (quoting *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2005)). To demonstrate irreparable harm, a plaintiff must show "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (cleaned up).

If the movant seeks a "mandatory preliminary injunction that alters the status quo by commanding some positive act," rather than a "prohibitory injunction seeking only to maintain the status quo," then the burden of proof is even greater. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (cleaned up) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)). Such a mandatory

injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (cleaned up).  A party seeking a mandatory injunction must make a substantial showing of a likelihood of success on the merits.  *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).  Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided the relief "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3626(a).  When injunctive relief is appropriate, it must be narrowly tailored, proportional to the scope of the violation, and extend no further than necessary to remedy the violation.  *See Brown v. Plata*, 563 U.S. 493, 531 (2011).  Thus, a court should not issue "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution."  *Id.*

## II.     Discussion

Lenti has not made a clear showing that he is being subjected to a threat of irreparable harm.  In this case (and in his motions requesting TROs), Lenti asserts that his cell at Cheshire contains a toilet and sink that do not comply with the ADA and that he has been denied the ability to use a wheelchair.  In response to Lenti's assertions, the Defendants filed an objection indicating that Lenti's needs are being met at Cheshire.  *See* Obj., Doc. No. 21, at 6.  The Defendants explain that, ever since Lenti was transferred to Cheshire in September 2019, Lenti

3

has been "placed in a block with several cells that are more accommodating to inmates with needs." *Id.*  Indeed, the "cells are equipped with raised toilet seats" and "have larger sink areas with counters." *Id.*  However, the Defendants concede that the cells do not have grab bars.  *See id.*  For that reason, Lenti was provided in January 2020 with a toilet chair.  *See id.*

With respect to Lenti's asserted need for a wheelchair, the Defendants contest Lenti's representation.  *See id.*  In fact, the Defendants report that Lenti has been "informed by multiple medical officials that he does not need one" and that "he should not use one in order to increase his activity in an effort to strengthen his lower extremities and help alleviate pain."  *Id.*  The Defendants also report that prison staff frequently observe Lenti "ambulating without any difficulty," and "usually without any assistive devices."  *Id.*  Still, the prison staff at Cheshire have provided Lenti with a "non-wheeled walker due to [h]is carpal tunnel."  *Id.*

The Defendants further claim that Lenti is "non-compliant with much of his medical treatment."  *Id.*  Specifically, Lenti "routinely misses morning diabetic line, has refused to be called for pain management medication, and previously refused transport for EMG testing on multiple occasions[,] which is required to fully assess any claimed spinal issues."  *Id.*  Neither Lenti nor the Defendants have submitted any evidence (in the form of medical records or otherwise) to support their respective representations about the Cheshire conditions and Lenti's need for further accommodations, such as a wheelchair.

Because Lenti seeks a mandatory preliminary injunction, he bears the heavy burden of making a "clear showing" that he is entitled to the relief sought, or that "extreme or very serious damage will result" if the requested relief is not granted.  *See Cacchillo*, 638 F.3d at 406.  Lenti has not satisfied that burden:  He has presented no evidence in his support, and the

4

Defendants represent that Lenti's medical and disability needs are being accommodated. Without more, Lenti has not made a clear showing that he is entitled to a prison transfer or to a single cell. Moreover, in the normal course, the DOC Commissioner has wide discretion to determine the appropriate housing and classification for an inmate. *McKinnon v. Chapdelaine*, 2013 WL 951324, at *1 (Conn. Super. Ct. Feb. 13, 2013) ("Our courts have clearly held that a prisoner has no liberty interest in his classification or assignment within the prison system because the commissioner of correction has discretion to classify or transfer prisoners held in his custody."); *see also* Conn. Gen. Stat. § 18–86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility . . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action."); *see also Olim v. Wakinekona,* 461 U.S. 238, 248 (1983); *but see Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

### III.  Conclusion

For the foregoing reasons, Lenti's pending motions seeking mandatory preliminary injunctive relief, doc. nos. 10, 15, and 27, are **denied**.

SO ORDERED at Bridgeport, Connecticut this 22d day of July 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge